IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GUERRIERO, on behalf of himself and others similarly situated,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**SOURCE PROVIDERS, INC.,** )<br>)<br>Defendant. )<br>) | CASE NO: 4:18-cv-1506<br><br>JUDGE BENITA Y. PEARSON<br><br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |

**I.     INTRODUCTION**

Representative Plaintiff and Defendant respectfully move this Court to approve the proposed FLSA opt-in Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit A.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes.  Plaintiff asserted that Defendant Source Providers, Inc. failed to include nondiscretionary bonuses and shift differentials in the "regular rate" for purposes of overtime compensation for Plaintiff and other similarly-situated, non-exempt employees.  *See* Plaintiff's Class and Collective Action Complaint (ECF # 1).  Defendant denied those claims, and protracted and costly litigation threatened to ensue.

In an effort to avoid the costs and uncertainties of protracted litigation, the Parties entered in a Stipulation and Proposed Order for Conditional Certification, Notice, Due Diligence Exchange, and Mediation (ECF # 17) (filed November 5, 2018).  The Stipulation provided for conditional certification of the case as a collective action under the FLSA, 29 U.S.C. § 216(b), and informal exchange of documents and information between the Parties enabling them to

conduct due diligence regarding the Plaintiff's claims. The Parties then engaged in extensive discussions regarding potential resolution which resulted in the Parties reaching agreement.

The proposed settlement constitutes a global resolution of the dispute in which settlement payments will be made available to all the Eligible Settlement Participants (as that term is defined in the Settlement Agreement). The individual payments are proportionate to the Eligible Settlement Participants' alleged overtime damages and represent approximately 175% (100% of underpaid overtime and 75% liquidated damages) of the estimated value of their claims.

If approved by the Court, the Settlement will provide for the issuance of notice to all Eligible Settlement Participants within forty-five (45) days of the Court's approval. Eligible Settlement Participants will have sixty (60) days to join the Settlement by executing and returning Consent Forms. Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[1]

The Parties respectfully submit that the proposed Settlement is fair and reasonable, and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties and conducted by experienced counsel. If approved by the Court, the Settlement will make settlement payments available to the Eligible Settlement Participants who elect to participate in the Settlement.

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A: Joint Stipulation of Settlement and Release

Exhibit B: Notice of Settlement of Lawsuit, with attached Consent and Release Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims

Exhibit C: General Settlement and Release Agreement

Exhibit D: Order of Dismissal and Approving Settlement

Exhibit E: Declaration of Plaintiff's Counsel Shannon Draher

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On July 3, 2018, Representative Plaintiff Michael Guerriero filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and a class action under Fed. R. Civ. P. 23, and alleged that Defendant failed to include nondiscretionary bonuses and shift differentials in its employees' "regular rate" for purposes of overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 and Ohio Minimum Fair Wage Standards Act ("OMFWSA") (the "Action"). On August 20, 2018, Defendant filed an answer to the Complaint disputing the material allegations both as to fact and law and denying any liability to Representative Plaintiff or any other employees, and asserting several affirmative defenses.

### B.     Negotiation of The Settlement

Between December 2018 and March 2019, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. This included the payroll data for the Eligible Settlement Participants and calculations of the Eligible Settlement Participants' alleged overtime damages.

In April 2019, the Parties reached an agreement to settle the Action on the terms set forth in this Settlement Agreement. The Parties reached the proposed settlement in this matter after extensive good faith bargaining.

### C.     The Settlement Terms

If approved by the Court, the Settlement will cover the Eligible Settlement Participants (which are identified in Appendix 1 of the Settlement Agreement) who elect to participate in the Settlement by signing and returning Consent Forms ("Settlement Class Members" or "Class Members").

The Total Eligible Settlement Amount is One Hundred Twenty-Eight Thousand Eight Hundred Eighty Seven Dollars Forty Seven Cents ($128,887.47), which sum will cover: (a) all of the Individual Payments to the Eligible Settlement Participants; (b) Representative Plaintiff's Class Representative Payment; and (c) Plaintiff's Counsel's attorneys' fees and expenses.

$54,604.69 of the Total Eligible Settlement Amount will be divided into Individual Payments to the Eligible Settlement Participants for alleged unpaid wages. $40,698.33 of the Total Eligible Settlement Amount will be divided into Individual Payments to the Eligible Settlement Participants for alleged statutory damages. The Individual Payments will be calculated proportionally on each Eligible Settlement Participant's overtime damages during the Calculation Period, as calculated by Plaintiff's Counsel and approved by Defendant. The

4

Individual Payments are provided in Appendix 1 of the Settlement Agreement.  Any Individual Payments to the Eligible Settlement Participants who do not become Settlement Class Members will be retained by Defendant.

Five Thousand Dollars ($5,000.00) of the Total Eligible Settlement Amount will be paid to Representative Plaintiff Michael Guerriero as a Class Representative Payment, in addition to his Individual Payment, in exchange for signing a general release of all claims.  In addition, $28,584.45 of the Total Eligible Settlement Amount will be paid to Plaintiff's Counsel for attorneys' fees and expenses ($25,000.00 in fees and $3,584.45 in expenses) incurred in the Action.  Finally, Defendant will retain, and pay the costs of, a third-party administrator to issue the Notice of Settlement of Lawsuit and Individual Payments to the Settlement Class Members.

In exchange, the Action will be dismissed, and the Settlement Class Members will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act, and any applicable state wage statute, including but not limited to the Ohio Minimum Fair Wage Standards Act for the Released Period.

To inform Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement of Lawsuit, with an attached Consent Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims.  The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by Plaintiff's Counsel or a third-party administrator.  The Eligible Settlement Participants who sign and return Consent Forms

will participate in the Settlement and their wage and hours claims, as asserted in the Plaintiff's Complaint, will be released.

**III.     THE PROPRIETY OF APPROVAL**

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Shannon Draher, and as explained below, Court approval is warranted.

**A.     The Seven-Factor Standard Is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Draher Declaration (*see* Exhibit E), the standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid overtime. A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiff's claims. Plaintiff alleged that he was not compensated properly for overtime hours and that each category of compensation Plaintiff and the Eligible Settlement Participants received should have been included in their regular rate of pay for purposes of calculating their overtime compensation, including non-discretionary bonuses and shift differentials. Defendant maintained that it properly compensated Plaintiff and the Eligible Settlement Participants. In addition, the Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied.

If forced to litigate this case further, the Parties would engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After filing the Action, relevant information was exchanged, including payroll records for the Eligible Settlement Participants and a complete analysis of each participant's alleged overtime damages. In addition, Plaintiff's Counsel engaged in a further independent investigation of the facts. Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4) The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### 5) Uncertainty of Recovery Supports Approval

Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### 6) Experienced Counsels' Views Favor Approval

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the Class Members as a whole, as described in the Draher Declaration.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

#### 1) The Individual Payments Are Reasonable and Adequate

All Individual Payments will be calculated proportionally on each Eligible Settlement Participants' alleged overtime damages during the Calculation Period. The Calculation Period shall mean the two-year period between November 5, 2016 and November 5, 2018.

If approved by the Court, the Proposed Settlement will provide adequate payments to the Eligible Settlement Participants for unpaid overtime compensation. Between November 5, 2016 and November 5, 2018, Plaintiff alleges that he and the Eligible Settlement Participants were allegedly denied $54,604.69 in overtime compensation during the Calculation Period, based on the records provided by Defendant.

Pursuant to the Settlement, each Eligible Settlement Participant who participates in the Settlement will receive 100% of their alleged overtime damages, as well as approximately 75% of their alleged liquidated damages. Accordingly, the settlement proceeds are fair, reasonable and adequate. Within fourteen (14) days after the consent period is completed, a Schedule of Individual Payments to the Settlement Class Members will be filed with the Court.

### 2)	Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances."  *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Draher Declaration (*see* Exhibit E) establishes that the proposed Service Award is proper and reasonable.  Representative Plaintiff Michael Guerriero's services

10

were extensive and effective. In addition to filing the collective action, he provided extensive factual information to Plaintiff's Counsel. Moreover, he subjected himself to the responsibilities of serving as a named plaintiff in a lawsuit against his former employer.

### 3) The Attorneys Fees and Expenses to Plaintiff's Counsel Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

The attorneys' fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Eligible Settlement Participants were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

Expenses are estimated to be approximately $3,584.45. All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement.

## IV. CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit D.

Respectfully submitted,

| | |
|---|---|
| *s/ Shannon M. Draher* | *s/ Michele L. Jakubs* |
| Shannon M. Draher (Ohio Bar No. 0074304) | Michele L. Jakubs (Ohio Bar No. 0071037) |
| sdraher@ohlaborlaw.com | mlj@zrlaw.com |
| Hans A. Nilges (Ohio Bar No. 0076017) | Lauren M. Drabic (Ohio Bar No. 0097448) |
| hans@ohlaborlaw.com | lmd@zrlaw.com |
| **NILGES DRAHER LLC** | **ZASHIN & RICH CO., L.P.A** |
| 7266 Portage St. NW | 950 Main Ave., 4th Floor |
| Suite D | Cleveland, OH  44113 |
| Massillon, OH  44646 | Telephone:   (216) 696-4441 |
| Telephone:  (330) 470-4428 | Facsimile:   (216) 696-1618 |
| Facsimile:   (330) 754-1430 | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2019, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                *s/ Shannon M. Draher*
                                                Shannon M. Draher
                                                *One of the Attorneys for Plaintiff*